THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW COLYER, et al., | ) | |
| | ) | No.: 12 C 4855 |
| Plaintiffs, | ) | |
| | ) | Judge Edmund E. Chang |
| v. | ) | |
| CITY OF CHICAGO, OFFICERS | ) | |
| R. MOSQUEDA, Star No. 13662 and | ) | |
| G. SIERRA, Star No. 3656, | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

## PLAINTIFFS' STATUS REPORT[1]

Plaintiffs respectfully submit this status report regarding the post-trial sanctions discovery in this case.

Plaintiffs believe that discovery should proceed in stages, with written discovery first, followed by depositions.[2]

To begin the written discovery phase, Defendants and their counsel should respond to the Requests for Production and Interrogatories attached as Exhibit A to this status report, within fourteen days, including producing all relevant documents

---

[1] Plaintiffs provided Defendants with a copy of their proposed status report on March 9, 2015. Thomas Leinenweber subsequently filed an appearance to represent defense counsel in these proceedings. Plaintiffs agreed not to oppose Mr. Leinenweber's request for additional time to review their proposed status report and provide the defense position, but because his motion for additional time (Dkt 350) has not yet been ruled on, Plaintiffs file their proposed status report without defense counsel's input. Plaintiffs also note that no new attorneys have filed appearances for the Defendants, and it is unclear who will be representing them during these proceedings (Plaintiffs believe that Defendants' existing counsel have a conflict).

[2] Plaintiffs believe Defendants should pay the costs and fees associated with the sanctions discovery.

by then. The response and document production should be overseen by outside counsel, or someone appointed by the Court.

All responses, including responses to Requests for Production, should be verified under oath, and subject to penalties of perjury. Each Defendant, all three trial attorneys for the Defendants, and Tom Platt (the Supervising counsel) shall submit their own verifications. In addition, Defendants and their counsel shall provide a detailed written description of how they conducted the review for responsive documents, including whose documents were searched, and how the searches were conducted. Finally, it is Plaintiffs' position that no objections should be permitted when responding to the Requests for Production or Interrogatories, and that the crime-fraud exception applies so that none of the relevant documents or communications may be withheld as privileged or protected work product.

Following written discovery, Plaintiffs will take depositions of at least the following: (1) Defendant Mosqueda; (2) Defendant Sierra; (3) Jordan Marsh; (4) Tom Aumann; (5) Dana Pesha; (6) Tom Platt; (7) Sgt. Lamperis; (8) Detective Gallagher; (9) Laura Dunaj; (10) Jill Maderak; (11) Darwin Olortegui; (12) any other Law Department support staff with relevant information; and (13) to the extent not already included in this list, anyone whose name appears on the document that the Law Department submitted to OEMC in January 2011 for relevant recordings. Defendants and/or their counsel shall pay the costs of the depositions.

Plaintiffs propose that they file an additional status report when those depositions are complete, advising the Court whether they believe additional written and/or oral discovery is necessary.

>Respectfully submitted,
>
>/s/ Scott Rauscher
>Scott Rauscher

Jon Loevy
Scott Rauscher
Loevy & Loevy
312 N. May Street, Suite 100
Chicago, IL 60607
(312) 243-5900

STEVEN A. GREENBERG
STEVEN A. GREENBERG AND ASSOCIATES, LTD.
53 W. JACKSON BLVD., SUITE 1260
CHICAGO, ILLINOIS 60604
(312) 879-9500
*Attorneys for Plaintiff Gloria Pinex, Administrator of the Estate of Darius Pinex*

## CERTIFICATE OF SERVICE

I, Scott Rauscher, hereby certify that on March 16, 2015, I caused the foregoing to be filed and served on all parties by the Court's CM/ECF electronic filing system.

>/s/ Scott Rauscher

# EXHIBIT A – REQUESTS FOR PRODUCTION AND INTERROGATORIES

## Instructions and Definitions

1. Each Defendant (including the City of Chicago) and each of Defendants' counsel of record, as well as Tom Platt, shall respond to each Request for Production and Interrogatory, in writing and under oath, within fourteen days. This request includes and encompasses any support staff, clerks, paralegals, or other counsel who assisted

2. Electronic documents shall be produced in native format unless the parties mutually agree to production in a different format.

3. The term "documents" means records of any kind, whether paper or electronic.[3]

4. The term "communications" means a statement of any kind and in any format.

5. The terms "case" and "shooting" refer to this case, and the facts of this case, including any fact mentioned at trial, the earlier for just recall, the towing of the car mentioned in the fourth District call, the investigation regarding the incident mentioned in the Fourth District call.

---

[3] The definitions of "Documents" and "Communications" come from Docket No. 336, the Document Preservation Order entered in this case.

## Requests for Production

1. All records relating to any requests by anyone for OEMC records relating to this case or the shooting death of Darius Pinex, including but not limited to call recordings, regarding any messages from January 6, 2011 or January 7, 2011 relating to any Oldsmobile Aurora.

2. All documents and communications between corporation counsel and anyone at OEMC relating to this case, including but not limited all emails.

3. All documents and communications relating to any OEMC records relevant to this case, including but not limited to all internal communications within the law department, all notes of any attorneys working on this case, and all notes for any OEMC employees who did any work on this case, including any notes from Jill Maderak and Laura Dunaj.

4. Call detail records for the cellular telephone, home, and work telephones of Jordan Marsh, Tom Aumann, Dana Pesha, Jill Maderak, Laura Dunaj, Sgt. Lamperis, and Detective Gallagher, (as well as any paralegal or support staff for the corporation counsel who worked on this case) for the period starting thirty days before trial and ending one day after trial. In the alternative, call detail records showing all calls between Marsh, Auman, or Pesha, (as well as any paralegal or support staff for the corporation counsel who worked on this case) on the one hand, and Maderak, Dunaj, Lamperis, or Gallagher, on the other hand, for the period of thirty-days before trial and continuing until one day after trial.

5. All documents showing the dates on which Marsh, Auman, and Pesha met with witnesses or potential witnesses to prepare for trial, including identifying with whom they met on which date.

6. All documents or communications relating to any calls over police radio involving an Aurora on January 6, 2011 or January 7, 2011, including and recordings of such calls, as well as any metadata associated with any such call.

7. All documents or communications relating to the collection or retrieval of any calls over police radio involving an Aurora on January 6, 2011 or January 7, 2011, or any requests for the collection or retrieval of those calls. This includes all internal communications within the Law Department, as well as all attorney notes, and any communications with the Defendants.

8. All communications between Defendants' counsel or anyone else from the City of Chicago Law Department's Civil Rights Division, on the one hand, and anyone from OEMC, on the other hand, relating to: (a) Darius Pinex; (b) Matthew Colyer; (c) this case; (d) any calls over police radio involving an Aurora on January 6, 2011 or January 7, 2011.

9. All documents or communications, including all metadata, relating to or reflecting any searches done by anyone for any calls over police radio involving an Aurora on January 6, 2011 or January 7, 2011.

10. All computer aided dispatch event query printouts for this shooting and the fourth District call that was produced during discovery.

11. All radio transmissions for this shooting and the fourth District call that was produced during discovery.

12. All event records for the fourth District call by any dispatcher.

13. All police computer aided dispatch (PCAD) records for both the fourth District call and this shooting.

14. All information sent to the officers' "PCAD work station" relating to any calls concerning this shooting.

15. Any record of a preliminary wanted message (quick flash) for the fourth district incident or a formal wanted message.

16. All records regarding the initial request of OEMC to retrieve the fourth district call and all records showing the transmission and/or transfer of any retrieved call, as well as any policy that explains how the Department of Law is to obtain OEMC recordings.

17. All ERPS records regarding RD #HT-112745, inventory #12238247, including a record of any time the inventory was retrieved or any communication regarding this inventory.

18. Sergeant Lamperis's schedule for the weeks of February 23 and March 2, 2015.

19. Front Office Memos or trial memos, prepared by trial attorneys.

20. Any notes taken during the trial conference held between the trial attorneys and any other corporation counsel, including at the meeting with Steven Patton the Thursday before trial.

21. All communications to or from OLA (Office of Legal Affairs) by attorneys and/or paralegals relating to any of the following: (a) Darius Pinex; (b) Matthew Colyer; (c) this case; or (d) any calls over police radio involving an Aurora on January 6, 2011 or January 7, 2011.

22. Initial Paralegal Checklist.

23. Red Flag Checklist.

24. Any and all Investigation Request Forms.

## Interrogatories

1. Identify everyone who provided the Defendants with the details of the call that they claimed to have heard but did not, and identify when the details were provided, including the following details: (a) that the call involved a gun and/or a shooting; (b) that the call involved a car with rims; and (c) and that the call provided the color of the car.

2. When did Jordan Marsh first request the OEMC call that was eventually played at trial as Plaintiffs' Exhibit 108, if ever? If he did request the call, explain in what form the request was made (email, voicemail, telephone call, etc.), and from whom. If he did not request the call, explain why not.

3. Identify all documents or communications that the Law Department received from OEMC relating to this case, Darius Pinex, or Matthew Colyer, and for each document or communication, identify: (a) the date or dates it was provided by OEMC; (b) who from OEMC provided it; (c) why it was provided; (d) in what form it was provided; (e) how it was provided; (f) whether it was shared with anyone outside the Law Department; and (g) if it was shared, either through discovery or otherwise, who it was shared with, and when.

4. Identify all documents OEMC provided to anyone relating to this case, Darius Pinex, or Matthew Colyer, and for each document or communication, identify: (a) the date or dates it was provided by OEMC; (b) who from OEMC provided it; (c) why it was provided; (d) in what form it was provided; (e) how it was

provided; (f) who it was provided to; and (g) if it was shared, either through discovery or otherwise, who it was shared with, and when.

5. Identify all communications that anyone from OEMC had relating to this case, Darius Pinex, or Matthew Colyer, and for each communication, provide: (a) the date or dates of the communication; (b) everyone involved in the communication; (c) a detailed summary of the communication; (d) the purpose of the communication; and (e) the form the communication took.

6. Why was the Fourth District call that Defendants did not hear, which became the subject of the parties' stipulation during trial, produced in discovery?

7. What did Sgt. Lamperis do with the three CDs containing what was later marked as Plaintiffs' Exhibit 108 at trial?

8. Identify everyone who received or heard the recording marked as Plaintiffs' Exhibit 108 before the trial in this case, state when they received or heard the recording, and produce all related documents and communications.

9. Provide all reasons why you chose to call Laura Dunaj to testify at trial rather than Jill Maderak, provide the date(s) you met with either of them to prepare for the trial in this case, and identify everyone who attend any of those trial preparation meetings.