THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW COLYER, et al., | ) | |
| | ) | No.: 12 C 4855 |
| Plaintiffs, | ) | |
| | ) | Judge Edmund E. Chang |
| v. | ) | |
| CITY OF CHICAGO, OFFICERS | ) | |
| R. MOSQUEDA, Star No. 13662 and | ) | |
| G. SIERRA, Star No. 3656, | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

## PLAINTIFFS' POSITION PAPER REGARDING
## DEFENDANTS' STATUS REPORT

Plaintiffs respectfully submit this position paper to further address the post-trial sanctions discovery in this case. As Defendants noted in footnote 1 of their status report, they did not contact Plaintiffs to discuss the status report until the Friday that it was due (after their unopposed extension), and they did not send Plaintiffs a draft of their proposed filing until nearly five p.m. that day.[1] Nonetheless, Plaintiffs still provided Defendants' with some initial feedback that day, including modifying their request in an effort to reach agreement. Defendants chose not to include or consider any of Plaintiffs' comments. Therefore, Plaintiffs submit this position paper to address certain issues in Defendants' status report, in advance of the parties' March 26, 2015 status conference.

Plaintiffs are deeply concerned with Defendants' lack of cooperation thus far. Although Plaintiffs recognize that additional counsel was brought in to represent

---

[1] When finally contacted by Defense counsel, Plaintiffs' counsel advised they would be unavailable after 4:00 p.m. Yet, Plaintiffs did not receive anything until after 4:00 p.m.

the City and the Defendants' trial attorneys, the new attorneys still chose not to meaningfully confer with Plaintiffs before filing their status report.

### A. Transparency of Discovery Process

Perhaps most concerning to Plaintiffs, the City's attorneys adamantly rejected the proposal that they inform Plaintiffs who they intend to talk in connection with their document collection efforts, both during the telephone conference the parties had on March 20, and again in Defendants' written Status Report. *See* Dkt 358 at 4. This is particularly disturbing given that the purpose of the discovery at issue is to get to the bottom of an extremely serious matter involving the failure to produce key evidence. There is no conceivable reason for Defendants and their attorneys to not be completely transparent throughout this process, including by identifying everyone from whom documents are collected and produced, as requested in Plaintiffs' Status Report. *See* Dkt 352 at 2.

Indeed, the identification of relevant document custodians is a common feature in discovery, and it is particularly appropriate here.[2] *See, e.g.*, *Charvat v. Valente*, No. 12 CV 5746, 2015 WL 993389, at *6 (N.D. Ill. Mar. 3, 2015) ("While Plaintiff could have had an ESI expert retained more expeditiously, and the parties should have communicated during the intervening time period, **the Court is troubled by the unilateral selection of custodians by Carnival without Plaintiff's**

---

[2] In the alternative, if the Court is not inclined to require the Defendants to be completely transparent during the discovery process, Plaintiffs propose starting the discovery process by taking a series of 30(b)(6) depositions about the Defendants' ability to produce relevant documents (including a 30(b)(6) targeted to OEMC), and would be prepared to start those depositions within a week of the March 26 status conference.

2

input.") (emphasis added); *Kleen Products LLC v. Packaging Corp. of Am.*, No. 10 C 5711, 2012 WL 4498465, at *6 (N.D. Ill. Sept. 28, 2012) (discussing process where parties conferred on relevant document custodians, and Court then participated in those discussions), objections overruled, No. 10 C 5711, 2013 WL 120240 (N.D. Ill. Jan. 9, 2013); *DeGeer v. Gillis*, 755 F. Supp. 2d 909, 929 (N.D. Ill. 2010) ("The Court is most troubled by the fact that there was no dialogue to discuss specific search terms or data custodians to be searched in advance of Huron conducting its searches….**For its part, Huron's failure to promptly disclose the list of employees or former employees whose emails it proposed to search and the specific search terms it proposed to be used for each individual violated the principles of an open, transparent discovery process. Huron was in the best position to take the lead in selecting data custodians and search terms but it should have been up-front with defense counsel regarding its proposed custodians and search terms and then receptive to defense counsel's input. Defendants should not have had to file a motion to compel to obtain disclosure of the custodians Huron identified and the search terms it developed for its production of electronically stored information in response to Defendants' subpoena.**") (emphasis added).

In addition to refusing to engage in a transparent discovery process, when advised that they were not to freely speak with OEMC employees, the City's attorneys said there was no indication of any such order being in place. Plaintiffs recognize that someone will need to talk to OEMC employees to ensure that all relevant documents are produced, but in the spirit of the Court's previous order

regarding discussions with OEMC employees, and given OEMC's central role in this part of the case, the City's attorneys should not be the ones having those conversations. Plaintiffs therefore propose the following alternatives: (1) Plaintiffs' counsel will speak to relevant OEMC employees and decide with those employees how relevant documents should be collected; (2) Plaintiffs' counsel, together with Defense counsel, will talk to OEMC employees to decide how relevant documents should be collected; or (3) Plaintiffs will conduct a Rule 30(b)(6) deposition of OEMC to determine what documents should be collected, from who, and in what format they should be produced. Plaintiffs would also welcome the Court's involvement in this process.

### B. Timing of Production

Although Plaintiffs do not oppose extending the time for Defendants to respond to discovery requests to 30 days from 14, they request that document productions be made on a rolling basis, starting almost immediately.

Some documents should take no time at all to produce – obvious examples of such documents include the voicemail that Mr. Aumann received from Sgt. Lamperis telling him that the relevant recording had been placed in ERPS, as well as Mr. Aumann's written request for the inventory sheet that was produced shortly before the end of the trial. Yet, it appeared during the parties' March 20 conference call that no relevant documents have even been collected yet. Plaintiffs do not understand why that is the case, given that they sent their original proposal to Defendants on March 9, and more importantly, given that the Court entered a

Document Preservation Order well before that, outlining specific categories of documents to be preserved. At a minimum, Defendants' trial counsel and the Law Department's Civil Rights Division should have begun to immediately collect relevant documents in their possession when the Court entered the document preservation order. If Defendants and the City have not even begun to collect relevant documents, how can they ensure that all relevant documents have been preserved?

### C. Discovery from Tom Platt

Mr. Platt may have been the Law Department employee who signed the original request from the Law Department to OEMC for audio days after the shooting. That request, which Plaintiffs first received during the trial, was signed by "Tom." If that "Tom" was not Tom Platt, he should be required to produce a declaration stating that, and the City should identify which attorney named Tom signed that form. If it was Mr. Platt, discovery from him is entirely appropriate, and it troubling that the City would oppose that discovery without even addressing Mr. Platt's role with respect to that original request.

### D. Scope of Discovery, Including Discovery from Defendants:

Plaintiffs generally agree that the discovery should be targeted to the OEMC calls, but not, as Defendants contend, solely targeted "to discovering the facts relating to the production during trial of the January 6, 2011 OEMC recording (the 'Recording')". Dkt 358 at 2. Defendants contend that Plaintiffs should not be permitted to re-litigate the merits of the case, but the "merits" and the OEMC

5

recordings can hardly be separated. Moreover, because Defendants had an active role in perpetrating their false story about hearing a call about a gun in an Oldsmobile Aurora, they must be required to participate in this discovery.

1. Scope of Discovery

With respect to Defendants' specific challenges regarding the scope of the discovery, the fact is that this recording was in the possession of the Chicago police within three days of the original shooting.[3] The scope of discovery should include every avenue that may lead to any explanation of why it was not produced.

To the extent Plaintiffs have requested internal documents that are potentially privileged (requests 19 and 20), those documents should, at a minimum, be produced to the Court for *in camera* inspection.

With respect to request number 4, Defendants misconstrue the scope of "support staff." The term is intended to refer to paralegals or others who were involved in preparing the case, investigating the case, and assembling documents.

As for telephone records, certainly, at a minimum, such records should be produced for the week before trial and the trial itself, when Mr. Marsh has indicated that he was making calls about the recording.

2. Defendants' Participation in Discovery

For years, the defense of this case on the "merits" centered on Defendants' story that they pulled over Darius Pinex's car because they heard an OEMC call saying that the car had a gun. That story was the underpinning of their entire

---

[3] Plaintiffs provided this feedback to Defendants before the defense filed their Status Report. Plaintiffs' feedback was ignored.

6

defense – the Defendants said that they needed to treat the stop like a life and death situation because they had heard there was a gun in Mr. Pinex's car. When the real recording was finally produced, it became clear d that this story was false, as was Defendants' testimony that the OEMC call they heard mentioned rims, or the color of the car.

As was revealed during trial, all of the details that Defendants had mentioned–about rims, the car color, and a gun–were mentioned only on a call about an Aurora that they did not hear, and none were on the only call about an Aurora that they might have heard. Plaintiffs are entitled to know how the Defendants learned the details from that other call, including if any of that information came from their attorneys.

There is no question that the Defendants discussed OEMC recordings with their counsel – in fact, Mosqueda testified at his deposition that he had listened to OEMC recordings to prepare for the deposition but did not hear the call he heard on January 6 or January 7, 2011. Plaintiffs are entitled to explore all conversations that Defendants had about OEMC recordings, both from the attorneys and from the Defendants themselves (which provides yet another reason that Defendants' trial counsel should not be representing Defendants anymore). Plaintiffs should also be permitted to explore any other conversations Defendants had with anyone else about the OEMC calls.

7

### E. Representation of Defendants

The Defendants' status report states that their trial counsel will continue to represent them in these proceedings. That is untenable. First, Defendants' trial counsel has a conflict with the Defendants under ABA Model Rule of Professional Responsibility 1.7 because their personal interests may be adverse to their clients' interests. Comment 10 to ABA Rule 1.7 is directly on point, stating that "[t]he lawyer's own interests should not be permitted to have an adverse effect on representation of a client. For example, if the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice." *See* Comment 10 to ABA Rule 1.7, available at http://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/rule_1_7_conflict_of_interest_current_clients/comment_on_rule_1_7.html (last visited on March 22, 2015).[4] Here, there is no question that "the probity" of Defendants' trial counsel "own counsel in a transaction is in serious

---

[4] The ABA Model Rules apply, as set forth in Local Rule 83.50. Moreover, although Defendants' trial counsel are responsible for examining their own potential conflicts, "[t]he court may raise the question if it has reason to believe that the attorney has neglected this responsibility, and opposing counsel may raise the issue if 'the conflict is such as clearly to call in question the fair or efficient administration of justice.'" *See DeLeo v. Swirsky*, No. 00 C 6917, 2003 WL 291914, at *1 (N.D. Ill. Feb. 10, 2003) (quoting Committee Comment to Local Rule 83.51.7); *see also Marwil v. Ent & Imler CPA Grp., PC*, No. 1:03-CV-00678-DFH-VS, 2004 WL 2750255, at *7 (S.D. Ind. Nov. 24, 2004) "opposing counsel may properly raise the question of a conflict of interest under Rule 1.7 only where the conflict is such 'as clearly to call in question the fair and efficient administration of justice.'" (quoting Comments to Rule 1.7(b), Indiana Rules of Professional Conduct, Adopted Effective January 1, 1987). Plaintiffs submit that Defendants' trial counsel's continued representation of Defendants calls "in question the fair or efficient administration of justice," making it appropriate for Plaintiffs or the Court to raise this issue.

question." Second, even if Plaintiffs did not have standing to raise that conflict, because Defendants' trial attorneys are separately represented, Plaintiffs do not believe it is appropriate they directly contact those attorneys to discuss this case at all, including to discuss matters like scheduling Defendants' depositions, making their continued representation of the Defendants completely impractical. Finally, the attorneys' involvement in the suppression makes their continued representation further untenable and impracticable.

                                                                                  Respectfully submitted,

                                                                                   /s/ Scott Rauscher
                                                                                   Scott Rauscher

STEVEN A. GREENBERG
STEVEN A. GREENBERG AND ASSOCIATES, LTD.
53 W. JACKSON BLVD., SUITE 1260
CHICAGO, ILLINOIS 60604
(312) 879-9500

Jon Loevy
Scott Rauscher
Loevy & Loevy
312 N. May Street, Suite 100
Chicago, IL 60607
(312) 243-5900

*Attorneys for Plaintiff Gloria Pinex, Administrator of the Estate of Darius Pinex*

<u>**CERTIFICATE OF SERVICE**</u>

I, Scott Rauscher, hereby certify that on March 22, 2015, I caused the foregoing to be filed and served on all parties by the Court's CM/ECF electronic filing system.

<u>/s/ Scott Rauscher</u>