# THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF
## ILLINOIS-EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW COLYER, et al., | ) | |
| | ) | No.: 12 C 4855 |
| Plaintiffs, | ) | |
| | ) | Judge Edmund E. Chang |
| v. | ) | |
| CITY OF CHICAGO, OFFICERS | ) | |
| R. MOSQUEDA, Star No. 13662 and | ) | |
| G. SIERRA, Star No. 3656, | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

## JOINT STATUS REPORT

Pursuant to the Court's March 26, 2015 Order, Plaintiffs and Defendants respectfully submit this joint status report regarding their positions on "deposition scheduling and other issues."

### Non-Deposition Issues

#### A. Issues Raised by Initial Discovery Responses[1]

**Plaintiffs' Position:[2]**

Initial document production and interrogatory responses have shown the following.

First, there was never any request made for the missing call, formal or otherwise, before trial. None of the discovery respondents have produced a single

---

[1] Plaintiffs are still working through the Law Department production, which was provided at approximately 5:00 p.m. on May 1, 2015.

[2] Plaintiffs believe that enough has already been uncovered regarding the Defendants' failure to fulfill their obligations regarding discovery to justify the entry of the directed verdict motion. **Law Department Respondents' Response:** the issue of a directed verdict has not yet been briefed and Plaintiffs' request for entry of one is premature.

1

document indicating that they ever searched for a recording of the call the officers claimed to have heard, before this Court ordered that they do so. The procedure in place requires a written request to OEMC when a recording of a police call is sought, and the first written request was submitted on February 26, after Ms. Dunaj had testified.

**Law Department Respondents' Position:** A copy of the original Law Department request to OEMC for voice transmissions related to the January 7, 2011, "Fatal Police Shooting of Darius Pinex" was produced on May 1, 2015. That Law Department request stated:

> PLS. PROVIDE ANY & ALL FIRE & POLICE COMMUNICATIONS, INCLUDING BUT NOT LIMITED TO 911 CALLS, DISPATCH, RADIO CALLS, ZONE, & TELEMETRY.

(*See* Law.00002-4, a copy of which is attached hereto as Ex. A.)

**Plaintiffs' Position:**

Second, Mr. Marsh may not have been the only trial attorney who was aware of the recording before trial. Ms. Pesha also had conversations with OEMC witnesses before trial. More discovery will be necessary on this issue, as Ms. Pesha's interrogatory responses are unclear on what she discussed with OEMC witnesses.[3]

**Law Department Respondents' Position:** Plaintiffs' questions regarding Ms. Pesha and Mr. Aumann's awareness of the OEMC recording may be addressed via their proposed deposition as outlined and agreed to by Law Department

---

[3] It is also not clear yet whether Mr. Aumann was informed about the recording before trial. Plaintiffs' counsel did not draft an interrogatory specifically asking that question, given the fact that only Mr. Marsh appeared to have known about the recording before trial.

Respondents below in the section regarding Depositions.

**Plaintiffs' Position:**

The Law Department Respondents have suggested they first tried to contact Sgt. Lamperis regarding the call on February 19, 2015.[4] They have identified a call to the general number at Area One of the police department to support that claim. Assuming that claim is true, it is inconsistent with what was first told to the Court, which was that they learned about the relevant recording on February 24, 2015, two days before Plaintiffs learned about it, and began immediately looking for the recording:

> MR. RAUSCHER: If they knew about it two days ago,
> why didn't we learn it until 20 minutes ago when we asked
> the witness.
>
> MR. MARSH: What I did is I called Lamperis, I got
> his number, called and left him a message. He is not going to
> know what was on the audio and I wanted to know what was
> on it. I called him. He didn't call me back. I called him, as
> we were going through this moments ago and got ahold of him.
> He wasn't working the other day and left a message at home.
> He called me back -- he didn't call me back. I literally just
> got ahold of him today because he was working. I asked
> him about it and that's what he told us.
>
> THE COURT: What prompted your inquiry to Lamperis?
>
> MR. MARSH: It was Laura or Jill that told me that
> the only record they had was of this disk going out
> to a sergeant, and they don't know why there was no
> -- there was no preservation of that at OEMC, but
> they sent three copies to the sergeant.

Discovery has also revealed that Mr. Marsh's second apology to the Court was incomplete, at best, and appears to directly contradict his sworn interrogatory

---

[4] Because of the February 19 call, Plaintiffs have now requested the Sergeant's work records.

responses. In Court on February 27, Mr. Marsh explained that he had actually learned about the recording before trial, at a meeting with the OEMC witnesses:

> THE COURT: Yes. Anything else?
>
> MR. MARSH: Yes. Second thing, Judge, as I am thinking about this issue with the CD and Sergeant Lamperis, I represented to the Court yesterday that it was a couple days ago that I first learned about the CD. I spoke to Jill Maderak at my office -- I remember that I was sitting in my office when I did it -- I was going over the event queries, and I have to -- I have to believe that that was sometime last week, because I don't think I would be speaking with her after court. So it may very well -- and certainly, I have talked to her and Ms. Dunaj about the CD multiple times, it may have been that I learned about the CD Thursday or Friday of last week. I don't know. I just wanted to let the Court know that that -- I may have been mistaken yesterday when it came up that -- the first time I heard about it was Tuesday, or I said a couple days before, because I do have that recollection of talking with Jill Maderak in the office. So it may have been prior to trial.
>
> THE COURT: Okay

Contrary to the above representation, the discovery responses do not mention a meeting with anyone from OEMC. And more importantly, Mr. Marsh has now provided a sworn interrogatory response admitting that knew about the recording before trial, contrary to his above suggestion that he was not really sure when he learned about the recording. Ex. 1, Marsh Interrogatory Responses. Based upon this response, Plaintiffs seek production of all records of all witness or potential witness meetings, including travel reimbursement records.[5]

---

[5] The Court previously limited Plaintiffs' Request No. 5 that asked the Law Department Respondents to provide details regarding every "witness or potential witness" that Marsh, Aumann, or Pesha met with. In the Court's March 26, 2015 Order, the Court stated the request was overbroad and limited it to Dunaj, Maderak, Lamperis, and Gallagher, and further limited that to sixty days before trial. Plaintiffs have provided no reason to justify altering that ruling.

The following text message between OEMC employees further undermines any claim that Mr. Marsh looked for the recording when he first learned about it:



Ex. 2, text message.[6] Moreover, this text message was produced without any context, and appears to be a continuation of an earlier conversation. Plaintiffs request that all text messages near in time to this one be produced as well..

**Law Department Respondents' Position:** Mr. Marsh's representations to the Court are consistent with his interrogatory answers. In Interrogatory answer 5, Mr. Marsh states that he spoke with Jill Maderak by telephone regarding the existence of an audio transmission on or about February 19, 2015. Mr. Marsh never represented to the Court he had a face-to-face meeting with Jill Maderak. On February 27, 2015, Marsh informed the Court that he recalled sitting in his office going over the event queries when he spoke to her: "I spoke to Jill Maderak at my office -- I remember that I was sitting in my office when I did it . . . ." *See* Feb. 27, 2015 Tr. at p. 13:20-24. Marsh further indicated he believed the conversation occurred "Thursday or Friday of last week," meaning February 18 or 19, 2015. *Id.* at

---

[6] Per the Court's March 26, 2015 designating the telephone numbers of record custodians as Attorneys' Eyes Only, Plaintiffs have redacted the telephone numbers from text messages.

pp. 14:3-11. Similarly, Plaintiffs' contention that Mr. Marsh's telephone record showing that he called Sgt. Lamperis on February 19, 2015, contradicts his statement to the Court is inaccurate. On February 27, Mr. Marsh clarified to the Court that he "may have been mistaken" when he indicated he learned of the CD two days prior. A record reflecting a phone call to Sgt. Lamperis on February 19, is entirely consistent with Mr. Marsh having a conversation with Jill Maderak on that same day.

Furthermore, if Plaintiffs still have concerns about whether these were meetings or phone calls, or the exact date on which they took place they may question Mr. Marsh and Sgt. Lamperis about that via deposition and this is not an issue properly before the Court at this time.

Plaintiffs' citation of a text message from Jill Maderak to Laura Dunaj does not "undermine any claim that [Mr. Marsh] looked for the recording when he first learned about it" as Plaintiffs allege. More importantly, this is not an issue properly included in this Status Report. Plaintiffs may direct questions about what Mr. Marsh did to contact Mr. Lamperis via a deposition as has been outlined and agreed to below in the section regarding Depositions. It's inclusion in this status report amounts to little more than a transparent attempt to put argument before the Court at a time when the parties are simply to be submitting deposition plans and discovery issues.

**Non-Law Department Respondents' Position:** These Respondents have already agreed to provide plaintiffs with further background information regarding what

prompted Ms. Maderak to send this text at the time she did and plaintiffs' counsel may question Ms. Maderak on this issue at deposition. As to plaintiffs' request for other text messages around this time period, which have no relevance to this case, this is the first time plaintiffs have made that request and it is not justified. The Non-Law Department Respondents already confirmed with plaintiffs' counsel that there were no relevant texts before or after this text between Ms. Maderak and Laura Dunaj. Ms. Maderak's text to Ms. Dunaj was prompted by a separate text from Mr. Marsh to Ms. Maderak, which was already produced. Also, subsequent texts between Ms. Maderak and Ms. Dunaj are shown on the phone's screen shot and it is apparent that they have no relevance to this case.

### Plaintiffs' Position:

Third, beyond issues with the recording that became Plaintiffs' Exhibit 108 at trial, Defendants' and their counsel failed to produce many other relevant documents until now, including another highly-relevant OEMC call.

The City produced hours of previously undisclosed recordings, including an OEMC recording from approximately 1 hour after Mr. Pinex was killed, in which the following exchange occurred between Officer Mosqueda's supervisor, Sgt. Siwek (who arrived on the scene within two or three minutes and remained with the officer throughout) and a dispatch operator:

> Siwek:  Yeah, that plate number [of] this car that's involved.
> You said it was wanted in something earlier, right.[7]

---

[7] It appears that Sgt. Siwek was operating under the assumption that Mr. Pinex's car was the wanted Aurora, a notion that would have quickly been dispelled had anyone compared the license plate numbers.

OEMC Operator: Yeah. Something came over the air earlier. They sent a flash message around. It was. I'll figure out who it was. 378M393. Mike's gonna to get it for me right now. But they were in pursuit of it in the Fourth District a little earlier tonight.

Siwek: 99. Thanks. If you could find out what it was pursued for, that would help. Thank you.

OEMC Operator: Okay. 10-4.

OEMC Dispatcher: Alright, 710Robert.

Siwek: 710Robert.

OEMC Dispatcher: Do you want um, do you want us to just call you. Would that be better?

Siwek: Yeah, You are you ready for my number.

OEMC Dispatcher: Yeah. Go ahead.

Siwek: [Number provided].

OEMC Dispatcher: Alright. 10-4. Mike's gonna give you a call.

Siwek: Thank you.

OEMC Dispatcher: You're welcome."

Ex. 3, Recording 1D from City 201, at 5:56 minutes through 8:53 minutes.

That Officer Mosqueda's supervisor needed to call OEMC to learn what the Aurora had been wanted for strongly supports the idea that, at a minimum, other officers provided them with the details about a gun, a shooting, rims, and the car's color (which, as discussed at trial in Plaintiffs' Motion for a New Trial, Defendants could not have heard on their own.) The fact that Siwek chose to have OEMC call

him on his cellular telephone to provide the details is even more suspicious, as there is no obvious legitimate purpose for using a cellular telephone instead of just having the OEMC Dispatcher provide him the information over his radio, where the conversation would be recorded.

Moreover, the recording starts with Siwek stating "you said it was wanted in something earlier" to the OEMC Dispatcher, which strongly suggests that at least one other relevant OEMC recording exists and has not been produced. Defendants must promptly produce this recording.

Given this new information, Plaintiffs request that:

(a) the Non-Law Respondents provide all documents and information that Siwek has about these calls and this incident, in writing and under oath. Siwek should also produce his cellular telephone records showing all calls that he received or made in January 2011. It is important for Plaintiffs to have this information before they take his deposition;"

(b) the Non-Law Respondents identify the OEMC dispatcher, as well as "Mike," so that Plaintiffs can depose them.

In addition, a number of other relevant recordings have now been produced, and Plaintiffs have asked the Non-Law Department Respondents to identify everyone who is on one of those calls. In one example, two people who appear to be dispatchers are heard laughing at Mr. Pinex's death, joking that "the dead guy" is the only person in custody. Beyond the obviously disturbing nature of this recording, it, along with other recordings in which OEMC dispatchers and officers discuss the

shooting (and what they do and do not know about the shooting) were relevant to Plaintiffs' case and are relevant to identifying individuals who should be deposed in this stage of the case. Therefore, Plaintiffs have asked the Non-Law Department Respondents to identify everyone on previously undisclosed OEMC calls relating to the shooting, and Plaintiffs request that the Court order them to provide that information.

**Law Department Respondents' Position:** The Law Department Respondents did not have any knowledge about the extended OEMC recording referenced by Plaintiffs, and did not have a copy of it during discovery or the trial in this matter.

**Non-Law Department Respondents' Position:** The Non-Law Department Respondents discussed the above issues with plaintiffs' counsel last week and agreed to investigate and provide plaintiffs with further information regarding the Sgt. Siwek exchange on the recording, any subsequent phone call with Sgt. Siwek, the identity of the OEMC dispatcher "Mike," and, to the extent possible, the identity of the other dispatcher and callers referenced, although Plaintiffs have not issued a formal written request for this information. Respondents do not see these as disputed issues.

**Defendants' Position:** The defendants did not physically possess, and therefore could not have personally produced or disclosed, the recordings that are now the subject of these discovery proceedings, nor did they physically possess or have the ability to produce or disclose the extended recording referred to by the plaintiffs here. The language used in this portion of the plaintiffs' status report to

the Court is conclusory, and there is no support in the materials produced by the parties for the contention that "the trial in this case was a sham as a result of Defendants' misconduct." The plaintiffs' position statement contains a number of assumptions without factual support, including the assumption that a cover up occurred, which is apparently based on three minutes of a radio transmission that does not involve the defendants themselves. This also includes the assumption that a police dispatcher and a police sergeant, an hour after the shooting, were already conspiring with the defendants because the dispatcher decided to call the sergeant on his cell phone. The defendants disagree that the specific pieces of evidence pointed to by the plaintiff in this report should automatically transform these proceedings from an inquiry into an alleged discovery violation into a second trial of this case.

### Plaintiffs' Position:

Finally, and at least equally disturbing as the failure to produce the recording, is that it appears there were at least three handwritten GPR's, one each for Sierra, Mosqueda, and Colyer, that were not tendered in discovery despite being in defense counsel's possession since November 2011. Each contains relevant material that was not previously provided, and with respect to the officers either omits information later added or contradicts parts of their story.

### Law Department Respondents' Position:

The Law Department Respondents are investigating this issue and will have more information at the Court's status hearing this Wednesday.

**B. Forensic Imaging of Trial Attorney Cellular Telephones**

<u>Plaintiffs' Position</u>:

At least two of the trial attorneys deleted relevant information from their cellular telephones when they had an obligation to preserve it.[8] Specifically, Tom Aumann did not save the voicemails he received from Sgt. Lamperis regarding the OEMC calls stored ta ERPS, and Dana Pesha did not save a string of text messages between the three trial attorneys discussing Sgt. Lamperis and other presently unknown details (the versions that were produced, from Mr. Marsh and Mr. Aumann, were heavily redacted). Moreover, the telephone records that have been produced show that the trial attorneys routinely sent each other text messages leading up to, and during, the trial. Plaintiffs do not know whether any of those text messages would contain relevant information without having forensic imaging conducted.

Therefore, to ensure that other relevant documents have not been deleted (and to recover them if they have been), Plaintiffs submit that it would be appropriate to order the Law Department to pay for forensic imaging of the trial attorneys' cellular telephones. Plaintiffs obtained multiple quotes for forensic imaging, and are prepared to retain a firm that will conduct this imaging for $750, which was the

---

[8] Although the preservation order was not entered until March 2, 2015, Dkt. 336, the Court's February 27, 2015 Order on Plaintiffs' Motion for a Directed Verdict plainly stated that at some point, discovery from the trial attorneys would be necessary. Dkt. 322. Therefore, their obligation to preserve relevant evidence was triggered, at the latest, on February 27, 2015. **Law Department Respondents Position:** Mr. Aumann deleted the voicemails on his personal cell phone on February 26, 2015, and Ms. Pesha did not delete the group text message from her phone—rather, an Apple software update removed them.

least expensive bid that they obtained. Respondents should be ordered to pay the cost of that process. To address any potential privilege issues, Plaintiffs will agree that the results should first be provided to counsel for the Law Department Respondents, who should then produce relevant documents and provide the Court with any privileged documents in camera.

**Law Department Respondents' Position:** The Law Department Respondents do not believe that forensic examination of the trial attorneys' cellular phones is appropriate or reasonably calculated to the discovery of admissible evidence.

First, Mr. Aumann did delete the voicemails he received from Det. Lamperis on February 26, 2015, as per his usual practice of deleting voicemails on his personal cell phone after listening to them. Mr. Aumann, did take contemporaneous notes as he was listening to the voicemail, and, therefore, the content of the message has been produced to Plaintiffs already. (*See* Aumann.00031, attached hereto as Ex. B.) Those notes indicate:

> Sgt. Jim Lamperis
> 1. HT-112745 → CD You're looking for at ERPS
> 2. Inv. # 12238247 – OEMC Tape, Zone 6 1/6/11 2145 to 2215

*Id.*

Second, the group text message between Ms. Pesha, Mr. Marsh and Mr. Aumann that Plaintiffs reference has already been produced in duplicate. The group text message was produced from Mr. Marsh's phone on April 26, 2015, at Bates number Marsh.00009-15. The group text message was also produced by Mr. Aumann on May 1, 2015, at Bates number Aumann.00017-30. (These group text

messages are attached as Ex. C with phone numbers redacted.) An Apple software update to Ms. Pesha's iPhone deleted the version of that group text message that existed on her phone.

The significant costs and time associated with forensic examination cannot be justified when compared to the likelihood of obtaining any admissible evidence. The price quoted by Plaintiffs of $750 per phone fails to take into account the extended expense of reaching accord and drafting a protocol for examination *e.g.* defining the scope of the examination and how the information recovered, if any, is reported and disclosed, including in the case of privileged communications.

Further, it is highly questionable whether a forensic examination can even recover the audio of a deleted voice message. Cell Phones are not the same as computers, meaning deleted data, especially in the case of voice mail, is more often than not – unrecoverable.

Finally, an examination is not warranted as Mr. Aumann's notes provide the content of the voicemails that he received from Mr. Lamperis in explicit detail and can be confirmed and addressed via deposition. The information that was lost form Ms. Pesha's phone has already been provided to Plaintiffs in duplicate. Forensic examination, therefore, is a fishing expedition that will greatly increase the cost to the City of Chicago and is not likely to lead to the discovery of new or useful evidence.

## C. Order Regarding Communications Between OEMC and Trial Attorneys

Plaintiffs' Position:

On February 27, 2015, the Court issued the following Order:

> In light of the OEMC recording disclosure and the need, either now or eventually, to determine why the recording was not disclosed earlier, the Court will limit the communications between defense counsel and Laura Dunaj, Jill Maderak, or any other OEMC records custodian who might have responded to any request for the recording (including any request in 01/2011 going forward). The communications limitations is as follows: no communications about this case, except for in-court examination and as otherwise pre-approved by the Court.

*See* Dkt. 320. This directive was reiterated at other times on the record. Yet, on March 4, 2015, Jill Maderak sent trial attorney Tom Aumann the following text message: "Congratulations I heard that you guys won the case that's great. You guys are really lucky on this one." Ex 4, City 320 (emphasis added).

Given that Ms. Maderak did not follow the Court's prior instruction, Plaintiffs request that the Court re-instruct OEMC witnesses that they may not discuss this case with the Defendants' trial attorneys.

**Non-Law Department Respondents' Position:** Counsel for the Non-Law Department Respondents have reminded Jill Maderak and Laura Dunaj of the Court Order to not contact the Law Department witnesses and they have confirmed their understanding. Respondents have no objection to the Court's re-instruction of these witnesses.

### D. Other Issues

<u>Plaintiffs' Position</u>:

Plaintiffs and Defendants/Respondents are engaged in the meet and confer process regarding a number of other issues with respect to the written discovery and will be prepared to advise the Court at the status conference whether any of those issues will require Court intervention. From Plaintiffs' perspective, those issues include:

1.      None of the responses to document requests have been verified. Although the parties have all promised to do so, none have done so yet.

**<u>Law Department Respondents' Position:</u>** The parties continue to meet and confer on verifying the document production response—a process that is not specified in the Federal Rules of Civil Procedure. The Law Department Respondents currently understand that Plaintiffs' counsel will be identifying some follow-up requests and will be producing some privileged materials for ex parte in camera inspection by the Court, and therefore, believe it makes the most sense to wait until document production has concluded prior to issuing any verifications.

**<u>Non-Law Department Respondent's Position:</u>** The Non-Law Department Respondents are in the process of gathering information in response to plaintiffs' follow-up requests, including plaintiffs' requested expansion of one of the email searches beyond March 4, 2015, and therefore believe it makes the most sense to wait until document production has concluded prior to issuing any verifications.

2.    The Law Department Respondents have not produced a privilege log.

**Law Department Respondents' Position:** The Law Department Respondents anticipate issuing a privilege log to Plaintiffs prior to Wednesday's status hearing.

3.    The Law Department Respondents' Interrogatory responses are incomplete. Because they did not provide their responses until after 5 p.m. on Friday, May 1, Plaintiffs have not yet been able to provide complete details to the Law Department Respondents explain the issues with those responses.

**Law Department Respondents' Position:** The Law Department Respondents are willing to meet and confer with Plaintiffs' counsel regarding any purported incomplete interrogatory responses.

4.    None of the respondents have provided adequate detail on how they conducted their search for, and review, of potentially relevant documents. For example, they have indicated that they applied search terms to emails, but they have not yet told Plaintiffs what search terms they used, or what review was conducted beyond applying the search terms.

**Law Department Respondents' Position:** The Law Department Respondents are willing to meet and confer with Plaintiffs' counsel regarding how they conducted the search for responsive documents.

**Non-Law Department Respondents' Position:** The Non-Law Department Respondents have agreed to supplement each of their responses to requests for production to provide information regarding from whom they requested relevant information for each request and who provided the documents that were produced

and to identify the search terms used for email searches and the custodians searched. Respondents would further note that in response to Interrogatory No. 10, Respondents have already identified who provided each of the documents produced.

5.     The Non-Law Department Respondents' Interrogatory responses are incomplete. They have agreed to provide some supplemental responses, but they have not yet done so.

**Law Department Respondents' Position:** This response is not directed at the Law Department Respondents.

**Non-Law Department Respondents' Position:** The Non-Law Department Respondents had a meet and confer with plaintiffs on this issue and agreed to provide certain supplemental information—specifically, further background information regarding the text from Jill Maderak attached hereto (CITY 000288) and a summary of all audio files contained on the CDs Bates-stamped CITY 000200-202. The other further information requested of the Non-Law Department Respondents by plaintiffs are covered in Part A above. That supplemental information does not fall under the original discovery requests, but the Non-Law Department Respondents are working on gathering that information and will provide those answers separately rather than as part of a supplemental response to plaintiffs' original discovery requests.

6.     The Non-Law Department Respondents have not yet completed their document production.

**Law Department Respondents' Position:** This response is not directed at the

Law Department Respondents.

**Non-Law Department Respondents' Position:** See No. 1 above. The Non-Law
Department Respondents will produce any supplemental documents, including from
the expanded email search, by Friday, May 8.


# Depositions

Plaintiffs' Position: Plaintiffs believe the following depositions are necessary:

1. Defendant Mosqueda

2. Defendant Sierra

3. Jordan Marsh

4. Tom Aumann

5. Dana Pesha

6. Victoria Benson

7. Sgt. Lamperis

8. Detective Gallagher

9. Detective Las Cola

10. Laura Dunaj

11. Jill Maderak

12. Darwin Olortegui- paralegal who submitted a request in January
2011 and worked on this case

13. Officer Siwek

14. "Mike," who agreed to call Siwek and who may work at the
dispatch center

15.      Georgia Beloso- a paralegal who submitted a request in
January 2011 for the zone 6 audio and worked on this case (Ms. Beloso

worked with OEMC during trial)[9]

16.    A 30(b)(6) deposition to address: (a) OEMC's retention policies, including OEMC's practices; (b) OEMC's ability to determine who retrieved, listened, or otherwise accessed OEMC recordings, including the date and time such person accessed the recordings; (c) the document collection and production during the underlying case and for the sanctions discovery; and (d) the Law Department's guidelines, if any, regarding the collection and production of relevant documents in litigation.[10]

**Law Department Respondents' Position:** Law Department Respondents' have no objection to deposing the individuals listed in numbers one through fifteen.

With respect to a 30(b)(6) deposition, there simply is no one individual that can provide comprehensive testimony of the document collection and production during the underlying case and for the sanctions discovery. The Law Department proposes that to the extent there are unanswered questions regarding document collection in this case that they be addressed after the taking of depositions of the Law Department deponents. The Law Department's guidelines regarding the collection and production of relevant documents in litigation, if any even exist, are not an issue in this proceeding and no purpose will be served from permitting Plaintiffs to explore and learn the Law Department's internal practices regarding the collection and production of documents.

---

[9] Ms. Belso did not "work with OEMC during the trial." She did, however, provide the request to OEMC for the audio Sgt. Lamperis had, and did send the notifications to OEMC to have Dunaj and Maderak present at Court.

[10] It appears from information provided thus far, that once there is a request to preserve audio, it remains with OEMC in perpetuity. Here there was a request as part of the initial, pre-lawsuit investigation in January 2011 by the city law department, police department, and/or IPRA.

**Non-Law Department Respondents' Position:** The Non-Law Department Respondents have no objection to the individuals listed in numbers one through fifteen. While the Non-Law Department Respondents also have no objection to the requested Rule 30(b)(6) deposition as to the OEMC issues directed to them (subparagraph (a)-and (b)), they concur with the Law Department Respondents that it would be more efficient to proceed with any such deposition, if deemed necessary, after the depositions of the other OEMC witnesses.

**Defendants' Position:** The defendants have demonstrated in their interrogatory responses, which are verified in accordance with the requirements of Federal Rule of Civil Procedure 33, that they have no knowledge or information about any issues related to the current discovery dispute. This is not surprising, given that the materials at issue are those that are normally kept by the City, as opposed to individual defendants. It should also be noted that there is no information in the respondents' discovery responses, nor is there any in the materials produced by the respondents, that truly supports the conclusion that the defendants knew about the continued existence or the whereabouts of the recording in question. All of the discovery responses show that the defendants' depositions are not needed to conduct a full inquiry into issues in question here, and further show that deposing the defendants would be inefficient and a waste of resources. As a result, the defendants ask the court to deny the plaintiffs' request for their depositions.

**Officers' story regarding the shooting would be, on January 7, 2011.**

**Plaintiffs' Position:** Plaintiffs should be allowed to ask questions about more than just the failure to produce the relevant OEMC recordings during discovery. Given the new evidence of a cover up between the police officers, Plaintiffs should be permitted to inquire into that as well.

**Defendants' Position:** The defendants object to the plaintiffs' attempts to broaden the scope of this inquiry, particularly since the plaintiffs are seeking what appears to be discovery about this alleged "cover up" that is unlimited in scope. As indicated in the order issued by this Court on March 26, 2015, the discovery being conducted here is "post-trial discovery arising out of the OEMC recording related discovery violation." The Court has not, and should not, allow the plaintiff to re-litigate the merits of this case at this stage. The jury in this case already issued a verdict, and the plaintiffs, believing that this verdict is incorrect, have challenged that verdict by filing a motion for a new trial under the applicable rules. If the plaintiffs are successful, the applicable rules may allow them to conduct the discovery that they seek. However, to seek this information at this time is pre-mature, and is contrary to the Court's previous order.

Respectfully submitted,

By: s/ Scott Rauscher
     One of the Attorneys for Plaintiff Gloria
     Pinex, Administrator of the Estate of
     Darius Pinex

STEVEN A. GREENBERG
STEVEN A. GREENBERG AND
ASSOCIATES, LTD.
53 W. JACKSON BLVD., SUITE 1260
CHICAGO, ILLINOIS 60604
(312) 879-9500

Jon Loevy
Scott Rauscher
Loevy & Loevy
312 N. May Street, Suite 100
Chicago, IL 60607
(312) 243-5900

                              Respectfully submitted,

                              By: s/ James M. Baranyk
                                  One of the Attorneys for Plaintiff
                                  Matthew Colyer

James M. Baranyk
Second City Law, P.C.
c/o Robert Johnson
33 N Dearborn, Suite 1950
Chicago, IL 60602
773.517.2904 (telephone)

                              Respectfully submitted,

                              By: s/ Molly E. Thompson
                                  One of the Attorneys for the Non-Law
                                  Department Respondents

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Molly E. Thompson
Dykema Gossett PLLC
10 South Wacker Drive, Suite 2300
Chicago, IL 60606
(312) 876-1700 (telephone)
(312) 876-1155 (facsimile)

Respectfully submitted,

By: s/ Justin L. Leinenweber
    One of the Attorneys for Law
    Department Respondents

Thomas M. Leinenweber
Justin L. Leinenweber
Leinenweber Baroni & Daffada LLC
203 North LaSalle Street
Suite 1620
Chicago, Illinois 60601
(312) 876-1700 (telephone)
(312) 876-1155 (facsimile)

Respectfully submitted,

By: s/ Brian P. Gainer
    One of the Attorneys for Raoul O.
    Mosqueda and Gildardo Sierra

Brian P. Gainer
Johnson & Bell
33 West Monroe Street, Suite 2700
Chicago, Illinois 60602
(312) 372-0770 (telephone)
(312) 372-9818 (facsimile)

## CERTIFICATE OF SERVICE

I, Scott Rauscher, hereby certify that on May 4, 2015, I caused to the foregoing to be
filed and served on all parties by the Court's CM/ECF electronic filing system.

/s/ Scott Rauscher